IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | | |
|---|---|---|
| RAY OLIVIS, | * | |
| Petitioner, | * | |
| v. | * | CIVIL NO.: WDQ-12-3112 |
| UNITED STATES OF AMERICA, | * | CRIMINAL NO.: WDQ-09-0183 |
| Respondent. | * | |

* * * * * * * * * * * * *

MEMORANDUM OPINION

Ray Olivis pled guilty to racketeering conspiracy and was sentenced to 132 months imprisonment. ECF No. 562. Pending are Olivis's *pro se* motions to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, ECF No. 597, and for production of documents, ECF No. 598. No hearing is necessary. *See* Rule 8 of the *Rules Governing § 2255 Proceedings*. For the following reasons, the motions will be denied.

I. Background

On April 8, 2009, Olivis and 21 other defendants were indicted on federal drug trafficking charges for smuggling contraband into Maryland prisons. ECF No. 1. The indictment alleged that the defendants were members or associates of the "Black Guerilla Family" ("BGF"), a gang that operates, *inter alia*, in Baltimore and Maryland prisons. *See id.* at 1-4; ECF No. 256 at 2 (superseding indictment). Also on April 8, 2009,

alleged BGF members Calvin Robinson and 11 other defendants were separately indicted on related drug trafficking charges. *See* ECF No. 411 at 3-4.[1] Robinson retained Roland Walker, Esquire, to represent him, and he pled guilty on February 5, 2010. *See id.* at 3-5.[2]

On June 5, 2009, Michael Montemarano, Esquire, was appointed to defend Olivis. ECF No. 126. On June 23, 2010, the government filed a superseding indictment charging Olivis with: (1) conspiracy to participate in racketeering activity, in violation of 18 U.S.C. § 1961 (count one); (2) conspiracy to distribute and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 846 (count two); and (3) money laundering, in violation of 18 U.S.C. § 1956. ECF No. 256 at 6-7, 22-24. On October 28, 2010, Walker and his associate Jason Silverstein, Esquire, entered appearances as retained counsel for Olivis. ECF Nos. 325-26.

On November 19, 2010, the government moved to disqualify Walker and Silverstein, and Olivis opposed the motion. ECF Nos. 336, 338. The government argued that, because Walker had previously represented Robinson--a BGF member who was acquainted with Olivis--on similar charges, there were actual and potential conflicts of interest in Walker's and Silverstein's

---

[1] *See also* case number WDQ-09-0184 (ECF No. 1).

[2] *See also* case number WDQ-09-0184 (ECF No. 176).

2

representation of Olivis. *See* ECF Nos. 336 at 1-4, 7, 411 at 5-7. On December 3, 2010 and January 18, 2011, Magistrate Judge Paul W. Grimm held hearings on the motion to disqualify and heard argument from the government, Walker and Silverstein, and Olivis. *See* ECF Nos. 411, 422. At the January hearing, Olivis stated that Montemarano had "done a wonderful job for [him] up to now," but he nonetheless preferred to be represented by Walker. *See* ECF No. 411 at 27.

Also at the January hearing, Judge Grimm found that, although there was no actual conflict of interest in Walker's representation of Olivis, a potential conflict of interest existed because of the number of defendants in the related cases, the complexity of the charged conspiracies, and Robinson's and Olivis's acquaintance. *See id.* at 31-32, 40-41. Because of this potential conflict of interest, Judge Grimm granted the government's motion to disqualify. *See id.* at 41.

On January 25, 2011, Olivis moved to reconsider Judge Grimm's ruling. ECF No. 391. Before the Court ruled on the motion, however, Montemarano negotiated a "C" plea[3] agreement for

---

[3] Federal Rule of Criminal Procedure 11(c)(1)(C) provides that a "plea agreement may specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)."

3

Olivis with his consent.[4]  See ECF Nos. 597-1 (2255 petition), 608-4 at 8 (signed plea agreement). Under that agreement, the parties agreed that 132 months was the appropriate sentence for Olivis. ECF No. 608-4 at 5. On April 27, 2011, Olivis was rearraigned and pled guilty to count one of the superseding indictment. ECF No. 452.

At the rearraignment, the Court explained the charges against Olivis, the rights he was relinquishing by pleading guilty, and the likely penalties he faced because of his plea.[5] See ECF No. 608-5 at 3-4, 8-11 (transcript of rearraignment). Olivis swore under oath that he understood the Court's statements. See id. Olivis also testified that he was satisfied with Montemarano's services and that Montemarano had not done anything Olivis had told him not to do or refused to do anything Olivis had asked. Id. at 5-6. He swore that he had read the plea agreement, discussed it with Montemarano, agreed to it, and signed it. Id. at 7. He confirmed that no one had threatened or forced him to plead guilty, and he was pleading guilty of his own free will. Id. at 8, 16. Finally, Olivis testified that he was pleading guilty because he was guilty of

---

[4] On April 29, 2011, following Olivis's guilty plea, the motion for reconsideration was denied as moot. See ECF No. 461.
[5] The Court informed Olivis that the crime for which he was pleading guilty "carries a maximum sentence of 20 years, a supervised release term of three years, a fine of up to $250,000, and . . . a special assessment . . . of $100." ECF No. 608-5 at 4.

4

the charged crime as described in the plea agreement. *Id.* at 11-16.

On August 4, 2011, the United States Probation office completed a pre-sentence report ("PSR"). The report concluded that Olivis's offense level was 32, he was eligible for a downward adjustment of three levels to 29 for acceptance of responsibility, and his criminal history category was VI. PSR at 7-8, 15 (sealed). He was a career offender, because of two prior felony convictions for possession with intent to distribute heroin and robbery. *See* PSR at 15. The PSR calculated an advisory Sentencing Guidelines range of 151 to 188 months imprisonment. PSR.

On September 14, 2011, the Court granted Montemarano's motion to withdraw because of a scheduling conflict. *See* ECF Nos. 538, 540. The same day, Mirriam Seddiq, Esquire, was appointed to represent Olivis. ECF No. 539. On October 18, 2011, Olivis was sentenced to 132 months imprisonment, in accordance with his "C plea" agreement with the government. ECF No. 562. Olivis did not appeal his conviction or sentence. ECF No. 597 at 2.

On October 22, 2012, Olivis moved to vacate, set aside, or correct his sentence under § 2255. ECF No. 597. The same day, Olivis moved to hold the proceedings in abeyance pending the

production of certain documents. ECF No. 598. On April 19, 2013, the government opposed the § 2255 motion. ECF No. 608.

II. Analysis

Olivis contends that his sentence should be vacated under § 2255 because: (1) he was deprived of counsel of his choice, in violation of the Sixth Amendment; and (2) his guilty plea was involuntary. ECF No. 597-1 at 4, 6.

A. Waiver

Olivis argues that the Court "violated [his] right to counsel of choice in violation of the Sixth Amendment . . . by granting the Government's motion [for disqualification] without requiring that a sufficient basis be specified to support the position of a potential conflict." ECF No. 597-1 at 4. In response, the government contends that he waived this claim by pleading guilty and procedurally defaulted this claim by failing to appeal. See ECF No. 608 at 4-6.

Olivis's counseled, knowing, and voluntary guilty plea forecloses his Sixth Amendment claim. A valid guilty plea waives all nonjurisdictional defects, including constitutional defects, in the proceedings conducted before the plea.[6] Because

---

[6] See Tollet v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L.Ed.2d 235 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.");

6

"[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding final judgment of guilt and a lawful sentence," a defendant has no nonjurisdictional ground upon which to attack that judgment except the inadequacy of the plea. *See United States v. Broce*, 488 U.S. 563, 569, 109 S. Ct. 757, 102 L.Ed.2d 927 (1989) (internal quotation marks omitted). Thus, "when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *Id.*

B. Voluntariness of Plea

Olivis contends that his plea was involuntary, because--after Walker's disqualification--he had to choose whether to plead guilty or "proceed[]" through a pre-trial motions hearing and a "jury trial without counsel of choice." ECF No. 597-1 at 6-7. This "forced decision" placed him under "extreme duress," which led him to plead guilty. *Id.* In response, the government argues that "a review of both the plea agreement [and] the transcript of Olivis'[s] plea . . . clearly establish a knowing

---

*United States v. Bundy*, 392 F.3d 641, 644 (4th Cir. 2004); *Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1294-96 (4th Cir. 1992) (petitioner's guilty plea barred collateral review of his claim that he was denied counsel during his rearraignment in violation of the Sixth Amendment).

7

and intelligent waiver of his rights and the voluntariness of his plea." ECF No. 608 at 7.

Federal Rule of Criminal Procedure 11(d) requires "the trial court to ensure that a guilty plea is voluntary, *i.e.*, is not the result of force, threats, or promises made by the government that are not part of the plea agreement." *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1991). The Rule 11 colloquy ensures that the guilty plea is voluntary by "inform[ing] the defendant of, and determin[ing] that he understands, the nature of the charges to which the plea is offered, any mandatory minimum penalty, the maximum possible penalty he faces, and the various rights he is relinquishing by pleading guilty."[7] *United States v. Donaldson*, 412 F. App'x 634, 635-36 (4th Cir. 2011). "[I]n the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted).

---

[7] During the Rule 11 colloquy, the district court must also determine if there is a factual basis for the plea. *See* Fed. R. Crim. P. 11(b)(3).

At the rearraignment, the Court informed Olivis of the nature of the charges against him, the rights he relinquished by pleading guilty, and the likely penalties he faced. See ECF No. 608-5 at 3-4, 8-11. Olivis swore that he understood the Court's statements. See id. Further, Olivis swore that he had reviewed the plea agreement with Montemarano, that no one had forced him to plead guilty, that he agreed to the plea agreement, and that he was pleading guilty because he was guilty. See id. at 7-8, 16. Although Olivis now contends that he was forced to plead guilty because he was denied Walker's assistance, see ECF No. 597-1 at 7, this statement contradicts his sworn testimony that no one had forced him to plead guilty, and he was pleading guilty of his own free will, see ECF No. 608-5 at 8, 16. Further, at the rearraignment, he did not state that he was pleading guilty because of Walker's disqualification, and he swore that he was satisfied with Montemarano's services. See ECF No. 608-5 at 6.

Moreover, Olivis pled guilty before the Court decided his motion to reconsider the disqualification of Walker, and he did not appeal the ruling on the government's motion to disqualify after pleading guilty. See ECF Nos. 461, 597 at 2. Also, even if Olivis had proceeded to trial without Walker and been convicted, the constitutional error he alleges in Walker's disqualification could have been reviewed on appeal after trial.

Thus, Olivis was not forced by Walker's disqualification to decide between an unconstitutional trial and an involuntary guilty plea. *See United States v. Moussaoui*, 591 F.3d 263, 279-80 (4th Cir. 2010) (rejecting argument that constitutional errors rendered guilty plea involuntary because defendant's only other choice was an unconstitutional trial, because if the defendant had proceeded to trial, he could have appealed the constitutional errors if convicted). Thus, Olivis has not established that his guilty plea was involuntary because of Walker's disqualification.

Finally, a § 2255 petitioner may bring a Sixth Amendment claim to challenge the validity of his guilty plea on grounds of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Fields*, 956 F.2d at 1296. To prove ineffective assistance, Olivis must show: (1) counsel's performance was deficient[8] and (2) the deficiency prejudiced his defense.[9] *See Strickland*, 466 U.S. at 687; *Hill*, 474 U.S. at 58-59. Although Olivis contends that he would have preferred

---

[8] To show deficient performance, Olivis must establish that counsel made errors so serious that the "representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[9] To show prejudice, Olivis must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Walker's representation, he does not argue that Montemarano was deficient in representing him. See ECF No. 597-1 at 8. At the January hearing on the motion to disqualify, Olivis told Judge Grimm that Montemarano had "done a wonderful job for [him] up to now." ECF No. 411 at 27. Also, during the Rule 11 colloquy at his rearraignment, Olivis swore that he was satisfied with Montemarano's services. See ECF No. 608-5 at 5-8. Accordingly, Olivis's plea was not invalidated by ineffective assistance of counsel.

Olivis has not presented any "extraordinary circumstances" to discredit his sworn statements at his rearraignment,[10] and these statements establish that his guilty plea was voluntary, see Donaldson, 412 F. App'x at 635-36. Because Olivis was convicted after he entered a counseled, knowing, and voluntary guilty plea, his motion to vacate his sentence will be denied. See Broce, 488 U.S. at 569.

C. Motion for Production of Documents

Olivis also requests the production of his sentencing and plea colloquy transcripts and to "hold the scheduling in abeyance" until those documents are produced. ECF No. 598.

Olivis is not entitled to obtain documents or other

---

[10] See Lemaster, 403 F.3d at 221 (examples of extraordinary circumstances include ineffective assistance of counsel and severe mental and physical illness).

materials at government expense absent a showing of a particularized need. *See United States. v. Shoaf*, 341 F.2d 832, 833-34 (4th Cir. 1964) (holding that there is no entitlement to a free transcript merely to determine whether to engage in litigation or to "comb the record in the hope of discovering some flaw") (internal quotations omitted); *Bozeman v. United States*, 354 F. Supp. 1262 (E.D. Va. 1973) (holding that federal prisoner "must state a claim of constitutional dimension" which "is neither frivolous on its face nor rendered moot under the law by other applicable doctrines," and "must specify with sufficient clarity those portions of the proceedings questioned . . . to permit an initial determination of relevance" by the court). In his motion for production of documents, Olivis only states that he needs the transcripts "to aid . . . him in establishing . . . a constitutional entitlement to relief," *see* ECF No. 598-1, and his § 2255 petition does not identify any error that occurred during the rearraignment or sentencing proceedings. Accordingly, Olivis's motion for production of documents will be denied.

D. Certificate of Appealability

A certificate of appealability ("COA") must issue before a petitioner may appeal the court's decision in a § 2255 case. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of

the denial of a constitutional right." § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotation marks omitted). Denial of a COA does not prevent the petitioner from seeking permission to file a successive petition or pursuing his claims upon receipt of such permission.

Because Olivis has not made a substantial showing of the denial of his constitutional rights, the Court will not issue a COA.

III. Conclusion

For the reasons stated above, Olivis's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, and his motion for production of documents will be denied.

4/17/14
Date

William D. Quarles, Jr.
United States District Judge